E-FILED
Monday, 27 June, 2005 11:42:29 AM
U.S. District Court, ILCD
FILED

JUN 2 7 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

ROBERT G. McCLAIN,                )
                                  )
        Petitioner,               )     Civil Case No. 05-1187
                                  )
                                  )     Criminal Case No. CR 02 10117
    v.                            )
                                  )
                                  )
UNITED STATES OF AMERICA,         )     Honorable Michael M. Mihm
                                  )
        Respondent.               )
                                  )
                                  )

## MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255

COMES NOW, Robert G. McClain (hereinafter "petitioner), appearing pro se, and respectfully asks this Court to grant his motion to vacate sentence pursuant to 28 U.S.C. § 2255.

### STATEMENT OF THE CASE

Petitioner was indicted in the United States District Court for the Central District of Illinois on felony drug charges. Count One charged petitioner with conspiracy to distribute cocaine and cocaine base; Count Two charged the distribution of more than 5 grams of cocaine base; and Count Three charged the distribution of more than 50 grams of cocaine base. On October 28, 2003, petitioner plead guilty to Counts Two and Three and the government dismissed Count One of the indictment.

On June 23, 2004, the district court held a sentencing hearing. The Probation Office had previously assessed petitioner's guideline

-1-

level at 29, and a criminal history category of V.

However, the district court determined that category V over-represented petitioner's criminal history and the court, therefore, departed to criminal history category III. See Sentencing Trans-cripts (hereinafter "Sent."), at 10; see generally U.S.S.G. § 4A1.3. After the departure, petitioner's guideline range was 108 to 135 months imprisonment. Sent. 12-13. Ultimately, the court sentenced petitioner to 120 months imprisonment on Counts Two and Three to run concurrently. Sent. 17. The 120-month sentence imposed was a result of the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(A).

Petitioner did not exercise his right to direct appeal, due to the advice of his attorney.

## STATEMENT OF FACTS

Before petitioner's plea of guilty, petitioner consulted with his trial and sentencing attorney Stephen M. Komie. Mr. Komie predicted that petitioner would get a five-year sentence in exchange for a plea to Counts 2 and 3. See Declaration of Robert McClain, ¶2 (hereinafter "McClain"). Petitioner signed the plea agreement and informed his family of Mr. Komie's prediction.

On June 23, 2004, petitioner was present with Mr. Komie for his sentencing hearing. Mr. Komie again repeated his prediction of a 5-year sentence. McClain, ¶4. Petitioner was however, sentenced to ten years imprisonment. Sent. 17.

Shortly after sentencing, Mr. Komie met with petitioner and his family in the hallway of the United States District Court. McClain ¶5. Mr. Komie first expressed his dissatisfaction with the severity

-2-

of the sentence but he also believed petitioner received the lowest
sentence possible.   McClain, ¶6.   At this point, petitioner informed
Mr. Komie that he wished to appeal his sentence.   McClain, ¶7.   Mr.
Komie then advised petitioner against appealing his sentence because
he believed the appellate court would reinstate the original criminal
history category of V and that would in turn, lead to a harsher sentence.
McClain, ¶8.   Petitioner decided to not appeal his sentence based
on Mr. Komie's advice.   McClain, ¶9.

-3-

## ARGUMENTS

I.   WAS COUNSEL INEFFECTIVE FOR ERRONEOUSLY ADVISING
     PETITIONER CONCERNING HIS APPEAL AND THIS ERRONEOUS
     ADVICE LED TO AN ABANDONMENT OF PETITIONER'S
     APPELLATE RIGHTS?

Trial counsel's consultation amounted to ineffective assistance
of counsel.  In discussing the ramifications of pursuing an appeal,
counsel erroneously advised petitioner that his sentence would be
increased if he exercised his right to appeal.  The question for this
Court is whether trial counsel's advice amounted to ineffectiveness
given that petitioner desired an appeal of his sentence and based
his decision not to solely on counsel's misplaced advice.

### A. Standards for ineffective assistance of counsel claims

To obtain relief under 28 U.S.C. § 2255 on the ground of ineffec-
tive assistance of counsel a petitioner must establish (1) that his
lawyer's performance was deficient as compared to an objective standard
of reasonable performance, and (2) that there is a reasonable probabi-
lity that the lawyer's errors prejudiced the outcome of the proceedings
against him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
"A reasonable probability is a probability sufficient to undermine the
confidence in the outcome;" it is a less demanding standard than the
preponderance of the evidence standard.  Id. at 693-94;  Williams v.
Taylor, 529 U.S. 362, 405-406 (2000).  Although the Strikland standard
is appropriate for most ineffective claims, the Supreme Court has mod-
ified the requirements according to the judicial proceedings.  See
e.g., Hill v. Lockhart, 474 U.S. 52 (1985)(guilty pleas); Evitts v.
Lucey, 469 U.S. 387 (1985)(appeals); Glover v. United States, 531 U.S.

-4-

198 (2001)(sentencing).

In determining whether an attorney is ineffective for failing to initiate an appeal the Court has held that the Sixth Amendment requires professional reasonable performance which often includes consultation. See Roe v. Flores-Ortega, 528 U.S. 470, 479-480 (2000)(Consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes"). The Court has also noted that when a lawyer's deficient performance deprives a defendant of an appeal altogether then the prejudice inquiry is altered from the usual adverse effect inquiry. See Flores-Ortega, 528 U.S. at 482-83. Instead, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors he would have timely appealed. Id. at 484. In other words, a defendant's inability to specify issues he would have raised on appeal plays no part in the prejudice inquiry. Id. at 486; see also Betts v. Litscher, 241 F.3d 594, 596 (7th Cir. 2001). The Flores-Ortega standard governs here.

B. Deficient performance

The Strickland Court imposed few requirements on an attorney's performance, but one it specifically enumerates is "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland, 466 U.S. at 688. Such consultation is the sine qua non of effective legal representation. See United States v. Holman, 314 F.3d 837, 841 (7th Cir. 2002); see also, ABA Standards for Criminal Justice, 21-2 (b) (2nd ed. 1980)("Defense counsel should advise a defendant on the

meaning of the court's judgment, of the defendant's right to appeal
and of the probable outcome of appealing"). Based on this duty, att-
orneys have a clear obligation to routinely consult and advise a defen-
dant regarding the possibility of an appeal. See Flores-Ortega, 528
U.S. at 479.

Also, an attorney's advice and misplaced understanding of relevant
law in regard to his client's case will effect a court's ineffective
assistance of counsel analysis. An attorney's demonstrated unfamiliar-
arity of the law directly relevant to a decision will eliminate Strik-
land's presumption that the decision was objectively reasonable because
it might have been made for strategic purposes, and it will often pre-
vent the government from claiming that the attorney made an adequately
informed strategic choice. See e.g., Williams, 529 U.S. at 395; Pavel
v. Hollins, 261 F.3d 210, 218 n.11 (2nd Cir. 2001)(collecting cases and
discussing how decisions made when counsel misunderstood relevant law
or facts cannot be characterized as strategic under Strikland).    In
many cases, a lawyer's unawareness of relevant law will also result in
a finding that counsel performed in an objectively deficient manner.
See e.g., Kimmelman v. Morrison, 477 U.S. 365, 385-86 (1986); Barker
v. Bardo, 177 F.3d 149, 154 (3d Cir. 1999); Magana v. Hoffauer, 263
F.3d 542, 550 (6th Cir. 2001). Against this backdrop, counsel's advice
here was erroneous and unconstitutionally deficient.

Shortly after sentencing, counsel and petitioner discussed the
ramifications of pursuing an appeal. First, petitioner informed coun-
sel that he wanted to appeal his sentence. Furnished with petitioner's
intentions, counsel then advised that if an appeal was taken it would

-6-

result in an increased sentence.  Specifically, counsel stated that the appellate court would reinstate the criminal history category to V (under the Federal Sentencing Guidelines), instead of level III which the district court departed to based on overrepresentation of petitioner's criminal history.  See U.S.S.G. § 4A1.3.  Based on counsel's advice, petitioner declined to appeal his sentence.

Counsel's consultation and advice was grounded in a misunderstanding of the relevant law.  First, there was no indication that the government would have cross-appealed the district court's criminal history departure had petitioner exercised his appellate rights.  In fact, the government had conceded that the district court possessed the discretion for the departure and argued that a one-level departure was appropriate.  Sent. 9.  Given this concession, it was highly unlikely that the government would have challenged this departure on appeal. Second, even if the government had cross-appealed the departure it would have been upheld by the appellate court.

Under Section 4A1.3 of the Federal Sentencing Guidelines a district court may depart from the calculated criminal history if a defendant's criminal history is overrepresented.  Unlike Chapter 5 departures, a court need not determine that some unusual or extraordinary factor justifies a criminal history departure under § 4A1.3.  This is so because the Sentencing Commission "specifically provided the district courts with flexibility to adjust the criminal history category." United States v. Shoupe, 988 F.2d 440, 445 (3d Cir. 1993).  Thus, the discretion possessed by the district courts under § 4A1.3 is exceptionally broad.  See United states v. Wilkerson, 183 F.Supp.2d 373, 380

-7-

(D.Mass. 2002); see also, Spencer Freedman, In Defense of Criminal History Departures, 13 Fed.Sent.Rptr. 311, 313 (May/June 2001).

In this case, the district court departed from Category V to Category III based on petitioner's age and the circumstances of the prior offenses (i.e., misdemeanor traffic offenses). Both of these factors have been routinely upheld in the circuit courts. See e.g., Shoupe, 988 F.2d at 477 (court can consider defendant's age on departure under 4A1.3); United States v. Brown, 903 F.2d 540, 544-45 (8th Cir. 1990)(departure based on age); United States v. Abbott, 30 F.3d 71, 72-73 (7th Cir. 1994)(same); United States v. Spencer, 25 F.3d 1105, 1113 (D.C. Cir. 1994)(departure based on "relatively minor nature" of prior offenses); United States v. Summers, 893 F.2d 63, 67-68 (4th Cir. 1990)(affirming departure based on exclusion of minor driving offenses); United States v. Mishoe, 241 F.3d 214, 219 (2nd Cir. 2001)(same). Even under the Protect Act, Pub. L. No. 108-21 § 401(d) (2003), the departure would have been upheld because both of the district court's factors for the departures are authorized under 18 U.S.C. § 3553(b)(1). Section 3553(b)(1) authorizes a court to depart based on a fact that was "not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines..." The Commission expressly provided for the departure the district court made. See U.S.S.G. §§ 4A1.3 and 5K2.7. In doing so, the "Commission has acknowledged that it could not adequately account for all the circumstances that might arise" in criminal history calculations, and thus a departure under such circumstances would be warranted. United States v. Flores, 366 F.3d 760 (8th Cir. 2003). Therefore, even under de novo

review (see Mallon, 345 F.3d 943, 945-46 (7th Cir. 2002)), the depart-
ure would have been affirmed by the appellate court.

Counsel's advice regarding an appeal undeniably resulted from his
misunderstanding of relevant law; in this case, the Sentencing Guide-
lines and review of departures made thereunder. Surely, counsel would
have researched these provisions to see if the departure would have
been upheld if the government challenged the departures on appeal. See
United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)("[F]amiliarity
with the structure and basic content of the Guidelines...has become a
necessity for counsel who seek to give effective representation.");
United States v. Glover, 97 F.3d 1345, 1349 (10th Cir. 1996)(Guidelines
is surely a matter "within the requisite expertise of a practicing mem-
ber of the criminal defense bar"). Accordingly, counsel's unawareness
of the relevant law evinced an abdication of his duty to be familiar
with the facts and law and rendered his advice unreasonable and unin-
formed.

Counsel's erroneous advice was a paradigmatic violation of the
first prong of Strikland and the principles announced in Flores-Ortega.
Because the decision to appeal was with the defendant, "the better prac-
tice is for counsel to routinely consult with the defendant regarding
the possibility of an appeal." Flores-Ortega, 528 U.S. at 479. As
such, a defendant should be able to rely on counsel's advice and cons-
ultation. Here, petitioner relied exclusively on counsel's advice and
it ultimately led to petitioner making a decision that was itself un-
informed. Therefore, counsel's counsultation and advice constituted
deficient performance.

In summary, counsel's advice was deficient because it was based on a misunderstanding of facts and law. Indeed, counsel's consultation was not based on any justifiable reason, and there was no strategic reason for giving this erroneous advice other than to scare petitioner from taking an appeal. Counsel was simply ineffective.

### C. Prejudice

Counsel's advice had a real-world impact on this case; it led to petitioner forfeiting an appeal that he would have otherwise taken. The prejudice resulting from counsel's consultation is apparent from the record. Both the declaration of petitioner and the affidavits of his family firmly establish that petitioner wished to appeal. Also, common sense establishes that petitioner would have appealed absent counsel's erroneous advice. Petitioner had everything to gain and nothing to lose by pursuing an appeal. All of these facts combined lead inevitably to one conclusion. Had petitioner not received erroneous information from counsel, the probability of him appealing would have matured from a reasonable probability to a very strong likelihood.

### D. Evidentiary Hearing

Petitioner requests an evidentiary hearing to determine whether counsel was ineffective. Section 2255 provides for an evidentiary hearing unless the motion, files and record conclusively show that the prisoner is entitled to no relief. See also Fontano v. United States, 411 U.S. 213, 215 (1973). In this motion and with the attached affidavits, petitioner has made a substantial showing that he is entitled to § 2255 relief and therefore, an evidentiary hearing is warranted.

-10-

II.  DID THE DISTRICT COURT ERR BY IMPOSING A MANDATORY MINIMUM
     SENTENCE UNDER 21 U.S.C. § 841(b)(1)(A) EVEN THOUGH THE
     PETITIONER POSSESSED COCAINE BASE INSTEAD OF CRACK COCAINE?

Petitioner asserts that the cocaine he possessed was cocaine base rather than crack cocaine.  Therefore, the enhanced penalties for crack cocaine were inapplicable and his sentence cannot stand.

Under the federal drug statues the narcotic type and quantity prescribe the sentence a defendant will receive.  Title 21 Section 841 mandates a mandatory minimum sentence of five years for possession of over 50 grams of cocaine.  See § 841(b)(1)(B).  However, there are enhanced penalties resulting in a ten year mandatory minimum sentence for possession of over 50 grams of cocaine base.  See § 841(b)(1)(A).  The question here, is which of the two provisions applied to petitioner.

The distinction between cocaine base and crack cocaine has recently been addressed by the Seventh Circuit.  See United States v. Edwards, 397 F.3d 570 (7th Cir. 2005).  The Edwards Court first noted that since powder cocaine and cocaine base are "scientifically synonymous" the statutory text of Section 841 was ambiguous.  Edwards, 397 F.3d at 574.  Nonetheless, after canvasing the legislative history the court concluded that "Congress intended the enhanced penalties to apply to crack cocaine and the lesser penalties to apply to all other forms of cocaine."  Id. (citing United States v. Booker, 70 F.3d 488 (7th Cir. 1995)).  Accordingly, the Edwards court reaffirmed Booker and held that "for purposes of the mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(A)(iii), the phrase 'cocaine base' refers to cocaine base that constitutes crack."  Id. at 577.

-11-

The same analysis applies to petitioner's sentence.  Petitioner did not possess over 50 grams of crack cocaine.  Instead, petitioner possessed over 50 grams of cocaine base which is scientifically synonymous with powder cocaine.  Based on Edwards, petitioner's sentence was limited to a five year mandatory minimum under 21 U.S.C. § 841 (b)(1)(B), and his sentence was clear error.

Furthermore, this sentencing error hindered the district court from sentencing petitioner to the low-end of petitioner's guideline range.  With an offense level of 29 and a criminal history category III, petitioner's guideline range was 108 to 135 months imprisonment.  Sent. 12.  With the incorrectly applied ten-year mandatory minimum the sentencing range was increased to 120 to 135 months.  Sent. 13.  See also United States v. Schaefer, 107 F.3d 1280, 1285 (7th Cir. 1997)(statutory mandatory minimum sentence takes precedence over guideline range).  Absent the enhanced penalties, petitioner could have received a lesser sentence especially since the district court ultimately sentenced petitioner to the low-end of the range (120-months).

Petitioner thus requests resentencing under 21 U.S.C. § 841(b)(1) (B) and without the ten-year mandatory minimum.

## CONCLUSION

WHEREFORE, petitioner respectfully requests that this Court grant his motion to vacate sentence under 28 U.S.C. § 2255 and any other relief the Court deems equitable.

Dated:    June 23, 2005

Robert McClain

Appearing Pro Se

-12-

## STATEMENT UNDER PENALTY OF PERJURY

I, Robert McClain, hereby affirm under penalty of perjury that the foregoing is true and correct based upon my knowledge and belief.

Respectfully submitted,

Robert McClain
FCI Pekin
P.O. Box 5000
Pekin, Illinois 61555-5000

Appearing Pro Se

## CERTIFICATE OF SERVICE

I, Robert McClain, hereby certify that I have placed a true and correct copy of the foregoing MOTION TO VACATE SENTENCE, in the FCI Pekin Legal Mailbox, first-class postage prepaid and properly addressed to the following on this 23rd day of June, 2005.

Jan Paul Miller
United States Attorney's Office
One Technology Plaza
211 Fulton Street, Suite 400
Peoria, IL 61602

OFFICE OF THE CLERK
309 Federal Building
100 N.E. Monroe Street
Peoria, IL 61602

Robert McClain
Appearing Pro Se

-13-

DECLARATION OF ROBERT McCLAIN

## Declaration of Robert McClain

I do hereby declare, under penalty of perjury that the foregoing statements are ture and correct pursuant to 28 U.S.C. §1746,

1.    That I am an inmate at the Federal Correctional Institution, in Pekin, Illinois.

2.    That my attorney, Stephen M. Komie, predicted that I would receive a 5-year sentence.

3.    That I discussed my plea agreement, sentencing and all aspects of my case with my mother, Dora Crawford, and my fiance, Nicole Connors.

4.    That on or around June 23, 2004, my attorney again predicted a sentence of 5 years, but I received a 10-year sentence.

5.    That after my sentencing, Stephen M. Komie, Dora Crawford and Nicole Connors and myself discussed the sentence I had just received and about an appeal of that sentence.

6.    That Mr. Komie said that my sentence was unfair but that he believed that I received the lowest sentence possible.

7.    That I explicitly told Mr. Komie that I wanted to appeal my sentence.

8.    That Mr. Komie advised me that I would receive a larger sentence if I appealed.  Mr. Komie stated that the appellate court would reverse the criminal history departure and reinstate a criminal history V.

9.    That I based my decision to forego an appeal solely on Mr. Komie's advice even though I truely wanted to appeal.

Dated:    June 20, 2005

Robert McClain